UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JANE DOE, JOHN DOE AND BILL DOE,

Plaintiffs,

v.

City of New Bedford, New Bedford School Committee, Pia M. Durkin Superintendent of Schools, Heather D. Larkin, Ms. Fernandes Principal of Roosevelt School of New Bedford, Mr. James Brumbaug Vice Principal of Roosevelt School of New Bedford.
DEFENDANTS

Civil Action No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. This is an action seeking redress for the denial of equal educational opportunity, violation of civil rights, and severe physical, emotional and psychological harm caused by the defendants. The defendants at all times acted intentionally and/or with deliberate indifference in their failure to properly supervise and train employees, as well as their failure to properly investigate disclosures of his injury, needs, bulling by students, removal of services unilaterally by district administrators, and failure to provide medically recommended services for no reason and refusal to provide accommodations for his serious injury. The defendants further acted intentionally and/or with deliberate indifference in their failure to properly and adequately respond to the disclosure of Bill's severe injury, harassment, bulling lack of services and failure to provide services to him to address the educational, social and emotional harms he suffered as a result.

2. The plaintiffs seek relief pursuant to 42 U.S.C. § 1983, 29 U.S.C. § 794, Mass. Gen. L. c. 12 § 11(I), 42 U.S.C. § 12131, 20 U.S.C. § 1681, Mass. Gen. L. c. 258 § 2, Mass. Gen. L. c. 93 § 102, Mass. Gen. L. c. 214 § 1C, Massachusetts common law and the Constitutions of the United States and the Commonwealth of Massachusetts.

**PARTIES**

3. The plaintiff, Jane Doe, is an adult resident of New Bedford, Massachusetts. Jane is the mother of the minor child, Bill and brings this action individually and as the next friend of Bill.

4. The plaintiff, John Doe, is an adult resident of New Bedford, Massachusetts. John is the father of the minor child, Bill, and brings this action individually and as the next friend of Bill.

5. During all or a portion of the relevant period, the plaintiff, Bill Doe was a minor student attending the New Bedford Public Schools' and a resident of New Bedford, Massachusetts.

6. The defendant, School New Bedford Committee ("the School Committee"), is the civil entity responsible for operating and governing the public schools in the New Bedford School District, Bill was a student during all or a portion of the times relevant to this action. The New Bedford School District ("District") is a recipient of federal financial assistance, including federal financial assistance provided to the District's schools and specialized education programs. The School Committee operates in, New Bedford Massachusetts and operates under color of state law. Defendant, acting through its members, and through the Superintendent, Pia M.

Durkin defendant, and/or other agents of the School Committee, personally participated in and/or directed actions which they knew or reasonably should have known violated Bill's constitutional rights.

7. The defendant, the Town of New Bedford Massachusetts ("New Bedford"), is the civil entity that oversees the activities of the New Bedford School Committee. New Bedford is located in the Eastern District of Massachusetts, and operates under color of state law. Defendant New Bedford, acting through its School Committee and through the Superintendent, Pia M. Durkin defendant, and/or other agents of the School Committee, personally participated in and/or directed actions which they knew or reasonably should have known violated Bill's constitutional rights.

8. The defendant, Pia M. Durkin, ("Durkin"), is an adult residing in the Commonwealth of Massachusetts. She was and remains employed by New Bedford and the School Committee as the Superintendent of the New Bedford School District and, as such, operated under color of state law at all times relevant to this action. During the period pertinent to this Complaint, Defendant Durkin was acting within the scope of her authority as an employee of New Bedford and the School Committee. As Superintendent, Durkin was the individual primarily responsible for and/or supervised others who were responsible for formulating and implementing policies and ensuring that the School Committee followed the law, including, but not limited to, equal access to education and equal treatment for all students, and was the ultimate authority and decision-maker of the School Committee. Durkin personally participated in and/or directed actions which she knew or reasonably should have

known violated Bill's rights under the United States Constitution and Massachusetts state law. She is being sued individually and in her official capacity as Superintendent of Schools.

9.  The defendant, Ms. D Fernandes ("Fernandes"), is an adult residing in the Commonwealth of Massachusetts. He was and remains employed by New Bedford and the School Committee as the School principal of the Roosevelt Middle School (Roosevelt) in the New Bedford School District and, as such,  responsibility to oversee the welfare of students in Mashpee High School and had immediate responsibility for the implementation of policies and procedures of the school, including ensuring that the School District complied with legal requirements under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") the American with Disabilities Act,  State and Federal laws against Bulling and Abuse and is required to see that all students can reach their full potential pursuant to MGLc 69 Section1. As Principal, Fernandes had the responsibility and authority to oversee the welfare of students in her School and had immediate responsibility for the policies and procedures of the school. Fernandes personally participated in and directed actions intentionally that he knew, or reasonably should have known violated Bill's rights under the United States Constitution and Massachusetts state law. She is sued in both his individual and official capacities.

10. The defendant, James Brumbaugh ("Brumbaugh") is an adult residing in the Commonwealth of Massachusetts. He was employed by New Bedford and the School Committee as the Assistant Principal of Roosevelt Middle School during all

or a portion of the period pertinent to this Complaint. Defendant Brumbaugh operated under color of state law at all times relevant to this action. During the period pertinent to this Complaint, Defendant Brumbaugh was acting within the scope of his authority as an employee of New Bedford and the School Committee. As Assistant Principal, Brumbaugh has the responsibility and authority to oversee the welfare of students in Roosevelt Middle School and had immediate responsibility for the policies and procedures of the school. As Assistant Principal, Brumbaugh personally participated in and/or directed actions which he knew or reasonably should have known violated Bill's rights under the United States Constitution and Massachusetts state law and did cause Bill harm. He is sued in both his individual and official capacities.

11. The defendant, Heather D. Larkin ("Larkin"), is an adult residing in the Commonwealth of Massachusetts. She was employed by New Bedford and the School Committee as the Director of Student Services for the New Bedford School District and, as such, operated under color of state law during all or a portion of the period pertinent to this Complaint. During all or a portion of the period pertinent to this Complaint, Defendant Larkin was acting within the scope of her authority as an employee of New Bedford and the School Committee. In her capacity as the Director of Student Services, Defendant Larkin was the person primarily responsible for formulating and implementing policies and ensuring that the School District complied with legal requirements under Section 504, the ADA, and all state and federal laws which deal with and mandate services to a student with a disability and she personally

had the oversight responsibility for any and all services for a child who had a disability. Larkin personally participated in and/or directed actions which she knew or reasonably should have known violated Bill's rights under the United States Constitution and Massachusetts state law. She is sued in both her individual and official capacities.

**JURISDICTION AND VENUE**

12. Jurisdiction of this court is invoked under the provisions of Sections 1331 and 1343(3) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code, Section 1400 et seq. of Title 20 of the United States Code, Section 794 of Title 29 of the United States Code and Section 12132 of Title 42 of the United States Code.
13. Pursuant to Section 1367(a) of Title 28, this court has pendant jurisdiction over the plaintiffs' state law claims for violations of the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12 § 11(I), Mass. Gen. L. c. 258 § 2, and Mass. Gen. L. c. 231 § 85X.
14. Venue properly lies in this judicial district pursuant to Section 1391 of Title 28 of The United States Code as the claims arose in this judicial district.

**FACTS**

15. On December 14, 2011 Bill sustained a concussion while playing indoor kickball in an afterschool program. The students were all wearing pajamas to school that day. Bill slid into third base slipped and struck the back of his head on the hardwood floor in the gym.

This afterschool program was run by employees of the New Bedford school district and overseen by them.

**16.** The flooring in the gym was antiquated, out of date, and did not meet building standards as it was a hardwood floor poured concrete with no foam padding as required to lessen the possibility of the type of injury suffered by Bill.

17. The city of New Bedford receives approximately 90% of the cost of their education program from both the state of Massachusetts and the federal government yet the city chooses to ignore the dilapidated buildings, and unsafe environment for the children. That these old dilapidated out of date buildings create

18. Bill's father was present at the afterschool program but did not see the moment when Bill hit his head as he was looking away at the time of the incident.

19. The gym floor was made of hardwood on top of concrete and did not meet the current specifications or requirements for children in a public school setting.

20. It is unclear whether or not if Bill lost consciousness but he seemed uncharacteristically angry and dazed. Although he wanted to get back and play he rested in the bleachers for about 20 minutes during which time he complained of a headache seemed very tired. It did appear that he regained his energy and did go back to play another 15 or 20 minutes.

21. After leaving the gym he accompanied his father on an errand and was left alone in the car for less than a minute and when his father came back to the car he was lying on the floor in a collapsed position. His father then took him to St. Luke's Hospital emergency room for a CT scan which was reportedly negative but Bill became nauseous and vomited for about three hours until given medication. He was then taken home and observed overnight.

22. On December 15 Bill was taken to his pediatrician who instructed his father to taking immediately to Hasbro's Children's Hospital for further evaluation. The doctors there were not able to do an MRI due to a metal component in his ear tubes.

23. It was obvious the to the doctors that he was light sensitive and noise sensitive and they recommended that he stay out of school up to Christmas vacation in order to have an extended rest. And not to consider returning to school until after the first of the year.

24. Bill attempted to return to school on Tuesday, January 3, 2012. But became more symptomatic after just one hour with increased nausea when trying to read the board for just a few minutes. Bill attempted to continue to go back to school but could only last an hour as he became much more symptomatic at that point.

25. At the end of January Bill had an evaluation at the Sports Concussion Center of New England in Brookline Massachusetts which clearly found significant issues dealing with memory, light sensitivity significant visual difficulties and ongoing headaches which could occur 4 to 5 times a day. The doctors at the New England Ctr. gave him a diagnosis of cognitive disorder given the effects of the concussion.

26. The extent of the concussion was clearly significant and Bill's pediatricians provided the school documentation that he was not ready to return to school. The parents provided numerous home hospital forms which bordered but the district refused to even consider home services for any of the 2011 – 2012 school year.

27. The parents asked for help on an ongoing and continuous basis as the school district insisted that Bill attend school even if it was only for one hour a day.

28. The district finally chose to have a team meeting on March 9, 2012 to discuss with the parents the possibility of a 504 accommodation plan, however when the family arrived at

the meeting they were presented with the plan and were told to sign it which is a clear

demonstration of bad faith as they had no ability to participate in the drafting of the plan.

29. The parent signed the form but did not acknowledge acceptance as the 504 plan was

clearly deficient given the lack of services as he was only in school for one

hour a day. The form confirmed that he could not last beyond 945 in the morning due to

the injury sustained on school property.

30. The school district continually refused to offer any services or programs or legitimate

services or tutoring for the balance of the 2012 school year even though the parents and Dr.

continue to request same.

31. On May 17, 2012 there was another 504 meeting which was again a take it or leave it

scenario and offered no direct services even though the medical providers again requested

same. Bill still was carrying a diagnosis of cognitive disorder NOS due to the persistent

post concussive symptoms. The district never requested or offered to do an evaluation of

their own given their child filing obligations under both state and federal law, has been was

still having memory difficulties light sensitivity significant headaches and visual issues.

32. For the balance of the 2011 – 2012 school year Bill was provided no academic support

whatsoever. Given his site issues the district never provided books on tape even though

they had access to such services. The school offered no emotional support. The school

failed to provide tutoring support and ultimately pulled it without notice. The district

provided manufactured grades which were not reflective of what Ben was actually

learning. The district provided manufactured grades which were not reflective of what Ben

was actually learning. The district

had a brain injured child did nothing to help and support him based on the medical recommendations and refused to do their own evaluation to support their lack of action. They just didn't care.

33. At the end of the 2011 2012 school years been transferred from Carney Academy elementary school which was for high-performing children to the Roosevelt Middle School.

34. Due to Carney Academy's negligence none of Bill's records were transferred to the Roosevelt school and therefore the Roosevelt staff are totally and completely unaware of bills issues until the staff had a meeting in early October with the father will explain the issues to them in detail. The parents continued requesting support for Bill but got no afterschool support or in school support of any real nature. On November 1, 2012 a 504 meeting was held and tutoring was finally provided in the form however it did not actually start until December 21, 2012 because the principal claimed there was no one to provide the tutor which was clearly an outright fabrication.

35. Bill did receive a few days a week of tutoring for the balance of the school year but the principal chose to ignore is obvious significant needs and issues.

36. Starting in October 2012 Bill was being subjected an ongoing regular basis with physical assault and battery by other students there were at least two incidences in October 3 in November 2 in December 3 in January February March and two in April and May. The bullying reports were all completed by assistant principal Brumbaugh who was the house master over Bill.

37. Upon reasonable belief Brumbaugh kept the file in his office regarding bullying which was at least 6 inches thick I March. He refused to give the parents any copies

38. of the official school reports dealing with the assault and battery upon their son claiming confidentiality as to the police being all minors.

39. Brumbaugh, upon reasonable belief, did not punish any of the children who beat and assaulted and did threaten to kill Bill. It was not until a student severely beat in March to the school take any action. The child was charged with seven criminal counts in the New Bedford juvenile court. The other children who were involved as encouragers and cheerers were not charged.

40. The parents were provided a copy of the police report however the names of the individual minor children were all blacked out solely parents had no idea of the individuals involved. Given the police action this made Bill even a bigger target at the middle school.

41. Because of the threats assaults and beatings Bill was given an aid to accompany him around the building but this made him even a bigger target for assaults by students. The school district however did nothing really to keep him safe.

42. The level of injury and incidences were so significant that for the last 2 ½ months of the school year Bill was on a police escort in school which single him out even more. He still was bullied pushed and shoved by students even with the police escort.

43. At a team meeting in the spring of 2013 the parents told the assembled team members that Bill was so depressed he spoke of killing himself on a regular basis. The principal chose to ignore any in school supports and told the parents to get

them outside counseling or they would file a 51A complaint with DCF which could have been removed from the home. At no time to the school offer any supports or counseling nor did they offer to pay for the counseling that they insisted child have. The principal told the parents to get it themselves and pay for the counseling.

44. Due to the threats by the school department and the failure of the school department to provide any real services the parents contracted with Dr. Laine in working for counseling for their son.

45. Because of the trauma and continued bullying the parents requested that Bill be transferred to the Keith middle school for the 2013 2014 school year. The parents called and wrote letters to principal Fernandes about their concern but she chose to totally and completely ignore the parents and did nothing to assist in the transfer of bill to a new school. The parents were not informed of the transfer until late August 2013 and only after calling on a weekly basis to get Bill moved.

46. The school department chose to stop the tutoring over the summer for no apparent reason and the parents therefore had to provide it at their own expense.

47. At the start of the 2013 – 2014 school year pursuant to in order by Heather Larkin all tutoring was stopped even though it was in the current 504 plan. The district just said no. Parents attempted to continue it at their own expense and asked for new 504 meeting in November as the school system refused to provide all support services of any type or nature based upon reasonable belief at the orders of Heather Larkin.

48. The district ignored all request for team meeting to go over the 504 program until February 7, 2014. At the meeting the team agreed to provide a number of support services and

smiled at the parents but none of the agreed to services were actually placed in the plan by the school administrators.

49. The parents communicated their concerns to all possible staff including Dr. Durkin the superintendent who chose to totally and completely ignore the needs of this young man which clearly demonstrated continued discrimination against a child with a significant and severe injury is seen all of the medical documentation.

50. The ultimate 504 plans which were issued and call for numerous accommodations for the medical doctor reports were never followed by the school staff. In fact the school staff impose greater restrictions on Bill due to the effects of his disability

**COUNT I**

Violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution, through 42 U.S.C. § 1983
(Against Defendants Durkin, Larkin, Fernandes, Brumbaug in their Personal Capacities)

51. The plaintiffs reallege paragraphs 1 through 47 above and incorporate them herein by reference.

52. Each and every act and omission alleged here was done by the defendants not only as individuals, but also under the color of state law and the pretenses of the statutes, ordinances, regulations, customs and usages of the Commonwealth of Massachusetts and in the rules, policies and direction of the New Bedford Public Schools, having been clothed with both actual and apparent authority by the governing body, the School Committee and/or New Bedford

53. .Bill Doe's right to bodily integrity was clearly established at all relevant times to this Complaint.

54. Defendants Durkin, Larkin, Fernandes, Brumbaug had a duty to exercise reasonable care in the selection, retention and supervision of employees, and to implement proper policies, practices and/or customs that ensured an educational environment for Bill Doe and other students that was free from assault, harassment, battery, beatings by students and to enforce the regulations, rules and laws necessary to protect Bill Doe and other students from acts of harassment and violence by the student body.

55. Defendants Durkin, Larkin, Fernandes, Brumbaug were responsible, individually and/or through their agents, for supervising the student body of the school.

56. Defendants Durkin, Larkin, Fernandes, Brumbaug failed to properly train and supervise employees and/or discipline them in order to avoid improper behavior of minor students.

57. Defendants Durkin, Larkin, Fernandes, Brumbaug failed to properly train employees and/or discipline them for their failures regarding their obligations to report such illegal behavior to the proper authorities in order to prevent constitutional violations.

58. Defendants Durkin, Larkin, Fernandes, Brumbaug failed to properly investigate and discipline students engaged in or having knowledge of inappropriate behavior with students.

59. By their failure to properly train and supervise employees to avoid improper behavior of students, and to properly train employees regarding their obligations to report such illegal behavior to the proper authorities, Defendants Durkin,

60. Larkin, Fernandes, Brumbaug adopted, approved and/or enforced a policy, practice and custom tolerating the violation of constitutional rights.

61. Defendants Durkin, Larkin, Fernandes, Brumbaug knowingly placed bill, an identifiable victim in the student body, in a position of danger by their failures.

62. Defendants Durkin, Larkin, Fernandes, Brumbaug failed to properly train employees and/or discipline them for their failures regarding their obligations to report such illegal behavior to the proper authorities in order to prevent constitutional violations and injuries to children.

63. Defendants Durkin, Larkin, Fernandes, Brumbaug failed to properly investigate and discipline students engaged in or having knowledge of inappropriate behavior with students and Bill.

64. By their failure to properly train and supervise employees to stop improper behavior by students, and to properly train employees regarding their obligations to report such illegal behavior to the proper authorities, Defendants Durkin, Larkin, Fernandes, Brumbaug adopted, approved and/or enforced a policy, practice and custom tolerating the violation of constitutional rights..

65. By their failure to properly train and supervise employees to avoid improper behavior of minor students, and to properly train employees regarding their obligations to report such illegal behavior to the proper authorities, Defendants Durkin, Larkin, Fernandes, Brumbaug adopted, approved and/or enforced a policy, practice and custom tolerating the violation of constitutional rights.

66. Defendants Durkin, Larkin, Fernandes, Brumbaug knowingly placed Bill, an identifiable victim in a position of danger by their failures.

67. The actions of other staff who failed to properly report the Bulling of Bill were condoned, encouraged and acquiesced to by Defendants

68. The Defendants' affirmative acts and failures were the moving force for and/or a direct causal link to and/or proximately caused the bulling and harassment suffered by the plaintiff and were so extreme and egregious as to shock the conscience.

69. Defendants intentionally, willfully and without justification deprived Bill Doe of his rights, privileges and immunities secured to him by the Constitution and the laws of the United States, including but not limited to, his rights to due process and to be free from physical abuse as provided by the Fourteenth Amendment of the Constitution and his right to privacy and to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

70. As a direct and proximate result of such deprivation, the plaintiff suffered physical injury, and suffered and continues to suffer indignity, humiliation, severe emotional distress and mental anguish.

## COUNT II

Violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution, through 42 U.S.C. § 1983
(Against the New Bedford)

71. The plaintiffs reallege paragraphs 1 through 66 above and incorporate them herein by reference.

72. New Bedford acted by and through its agents, including but not limited to Defendants and the New Bedford School Committee.

73. Defendant New Bedford had a duty to exercise reasonable care in the selection and retention of employees and to provide and ensure an educational environment for Bill Doe that was free from bullying, assaults, battery, and to enforce the regulations, rules and laws necessary to protect Bill Doe and other students from acts of harassment and violence.

74. Defendant New Bedford failed to properly train and supervise employees and/or discipline them in order to avoid improper behavior subjected to minor students.

75. Defendant New Bedford failed to properly train employees and/or discipline them for their failures regarding their obligations to report such illegal behavior to the proper authorities in order to prevent constitutional violations.

76. Defendant New Bedford failed to properly investigate and discipline employees having knowledge of inappropriate behavior of students.

77. By their failure to properly train and supervise employees to avoid improper behavior of minor students, and to properly train employees regarding their obligations to report such illegal behavior to the proper authorities, Defendant New Bedford adopted, approved and/or enforced a policy, practice and custom tolerating the violation of constitutional rights.

78. By their failure to properly investigate and discipline of students engaged in inappropriate behavior in a manner to prevent constitutional violations, Defendant Town of New Bedford adopted, approved and/or enforced a policy, practice and custom tolerating the violation of constitutional rights.

79. The customs, practices and policies of Defendant New Bedford placed Bill, an identifiable victim in a position of danger of violations of his constitutional rights.

80. The affirmative acts of the Defendant New Bedford, including, but not limited to, its implementation of customs, practices and/or policies that resulted in a failure to properly train and supervise its employees regarding required procedures for investigating and

responding to reports of abuse, bulling, assault and battery were the moving force for and/or a direct causal link harassment suffered by the plaintiff and were so extreme and egregious as to shock the conscience.

81. Defendant New Bedford, after receiving information related to abuse and unlawful conduct by various students, remained deliberately indifferent and tacitly authorized, condoned, encouraged and acquiesced to the continuation of their wrongful and criminal conduct.

82. Defendants intentionally, willfully and without justification deprived Bill Doe of his rights, privileges and immunities secured to him by the Constitution and the laws of the United States, including but not limited to, his rights to due process and to be free from abuse, bulling and assaults and battery as provided by the Fourteenth Amendment of the Constitution and his right to privacy and to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

83. As a direct and proximate result of such deprivation, the plaintiff suffered and continues to suffer invasion of bodily integrity, physical injury, indignity, humiliation, severe emotional distress and mental anguish.

**COUNT III**

Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983 (Against Defendants Durkin, Larkin, Fernandes, Brumbaug in their Personal Capacities)

84. The plaintiffs reallege paragraphs 1 through 143 above and incorporate

them herein by reference.

85. Bill Doe's right to Equal Protection of the Laws guaranteed by the

Fourteenth Amendment to the United States Constitution was clearly established at all relevant times to this Complaint.

86. Defendants Durkin, Larkin, Fernandes, Brumbaug had a duty, themselves and through their agents, to treat Bill Doe and other students equally and to provide him with an equal access to education.

87. Defendants Durkin, Larkin, Fernandes, Brumbaug had the authority and responsibility to ensure that Bill and other students were protected from harassment and assault other students.

88. Defendants Durkin, Larkin, Fernandes, Brumbaug knew and/or reasonably should have known that their failure to follow the recommendations of the treating physicians with respect to Bill's disclosure of the ongoing bulling subjected Bill to harassment, retaliation by her peers and disparate treatment and interfered with his well-established constitutional rights to an equal education, yet they failed to take proper action.

89. Defendant's actions and nonaction rendered Bill more vulnerable to harassment by peers by failing to take adequate steps to prevent or deter harassment, resulting in further emotional harm and deprivation of her equal right to access his education.

90. Defendants Durkin, Larkin, Fernandes, Brumbaug, themselves and through their agents, were aware of conduct wherein other students bullied, harassed, taunted and criticized Bill within the school turned a blind eye to said conduct.

91. By their failure to follow the recommendations of the treating Doctors to properly investigate bullying and harassment and to take action to stop such conduct by

students, the Defendants adopted and approved a policy, practice and custom tolerating such harassment and bullying and tolerating violations students' rights to an equal education.

92. The actions of students against Bill were sufficiently severe and pervasive to create an abusive educational environment.

93. The response and/or lack of response by Defendants Durkin, Larkin, Fernandes, Brumbaug to the harassment was unreasonable in light of the known circumstances and demonstrated deliberate indifference to the rights of Bill and other students and was so extreme and egregious as to shock the conscience. Defendants subjected Bill to disparate treatment and otherwise violated his Constitutional rights by subjecting him to a hostile educational environment, permeated by severe and pervasive harassment of which the defendants knew or should have known.

94. The violation of Bill's federally protected right to equal protection of the laws was proximately caused by affirmative acts and failures by the Defendants.

95. Defendants actions violated the Equal Protection Clause of the 14th Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

96. As a direct and proximate result of such deprivation, the plaintiff suffered and continues to suffer, physical injury, indignity, humiliation, severe emotional distress and mental anguish.

## COUNT IV

Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794
(Against the City of New Bedford and the School Committee)

97. The plaintiffs reallege paragraphs 1 through 92 above and incorporate them herein by reference.

98. Section 504 requires recipients of federal funding to provide an appropriate education to all qualified handicapped persons who are in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

99. The District is a recipient of federal financial assistance, including federal financial assistance provided to the District's schools,  and Section 504 programs.

100.     Recipients of federal financial assistance must provide regular or special education and related aids and services designed to meet the individual educational needs of disabled persons as adequately as the needs of non-disabled persons are met and may not discriminate on the basis of disability in providing these services.

101.     Pursuant to 29 U.S.C. § 794, Defendants are required to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of FAPE.

102.     Defendants acted with deliberate indifference and gross misjudgment when they failed to conduct a timely evaluation of Bill in accordance with the school's established Section 504 procedures, even though they were on notice that Bill was a qualified individual with a disability.

103.     Defendants grossly and substantially departed from accepted professional judgment, practice, or standards when they failed to request consent to evaluate Bill upon his disclosure of the serious injury from the school floor.

104.     Defendants continued to act with deliberate indifference, gross misjudgment and a blatant disregard for Bill's rights when they continued in their failure to refer Bill for an evaluation for s services from December 2011 to January 2013.

105.     Defendants intentionally and deliberately discriminated against Bill on the basis of his disability and treated her differently from his other-disabled peers because of the

nature of his disability, which manifested in such a way that he required significant services which the district refused to provide.

106. Defendants intentionally and deliberately failed and refused to evaluate Bill, despite their obligation to do so, and instead allowed and encouraged him to leave class, and ultimately to leave school, for significant periods of time to avoid the time, effort, resources and expense necessary to implement proper accommodations, to which he was entitled, that would enable him to remain in class.

107. Defendants further discriminated against Bill by treating him differently than his non-disabled peers.

108. As a direct and proximate result of Defendants' deliberate and intentional actions and violations as described above, Bill was denied access to his education in violation of Section 504.

109. As a direct and proximate result of Defendants' deliberate and intentional actions and violations as described above, Jane and John Doe were denied procedural safeguards with respect to the provision to Bill of access to her education as required under Section 504.

110. As a direct and proximate result of Defendants' discriminatory actions, Bill suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish and invasion of bodily integrity.

## COUNT V

(Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131)
(Against the City of New Bedford and the School Committee)

111. The plaintiffs reallege paragraphs 1 through 106 above and incorporate them herein by reference.

112. New Bedford Public Schools is a public entity as defined by Title II of the Americans with Disabilities Act ("ADA").

113. Title II of the ADA provides that persons with disabilities shall be afforded meaningful access to the programs and activities of public entities.

114. The denial of Bill's rights, failure to accommodate and discriminatory conduct by the Defendants resulted from disability-based animus.

115. Bill is a qualified individual with a disability which substantially limited his ability to access his education.

116. Defendants knew or should have known of the discriminatory acts and/or omissions of its agents and employees and their failure to remedy this discrimination.

117. Instead of evaluating Bill, attempting to understand the manifestations of his disabilities and providing him with reasonable accommodations for purposes of accessing his education, Defendants intentionally and/or with deliberate indifference, chose to ignore, punish and discriminate against Bill because to do otherwise would require a significant amount of resources and attention.

118. As a direct and proximate result of Defendants' ignorance, punishment and discrimination, Bill was excluded from participation in and/or denied the benefits

of New Bedford's services and/or programs by reason of her disability and suffered damages as further set forth herein.

## COUNT VI

Intentional Infliction of Emotional Distress
(Against Defendants Durkin, Larkin, Fernandes, Brumbaug)

119. The plaintiffs reallege paragraphs 1 through 114 above and incorporate them herein by reference.

120. Defendants engaged in conduct which they knew or reasonably should have known was likely to result in emotional distress.

121. Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.

122. As a direct and proximate cause of Defendants' conduct, the plaintiff suffered severe emotional distress of a nature that no reasonable person could be expected to endure.

**COUNT VII**

Gross negligence on the part of the City of New Bedford and the New Bedford Public School Committee through 42 U.S.C. § 1983

123. The plaintiffs reallege paragraphs 1 through 118 above and incorporate them herein by reference.

124. The defendants were grossly negligent in their failure to maintain and repair the antiquated school district buildings in compliance with state regulations and mandates.

125. The defendant's failure to comply with state mandates and building codes directly related to the injury suffered by the plaintiff, Bill, in the action before this court.

126. Had the New Bedford public schools and the city of New Bedford provided proper maintenance and modern buildings in compliance with state law and regulations there is

a high degree of likelihood the degree of injury suffered by the plaintiff in this matter would not have occurred.

127. As a result of the defendant's negligence Bill would not have suffered the amount of pain and suffering, emotional distress, harassment, beatings, educational issues, or emotional distress is alleged here in.

**COUNT VII**

Negligent Infliction of Emotional Distress
(Against the City of New Bedford, New Bedford School Committee, and Defendants Defendants Durkin, Larkin, Fernandes, Brumbaug)

128. The plaintiffs reallege paragraphs 126 through 1 above and incorporate them herein by reference.

129. Defendants owed a duty to plaintiffs to exercise reasonable care when assuming the care, responsibility and supervision of Bill.

130. Defendants were negligent and breached their duty to exercise reasonable care in providing a safe environment in the New Bedford School System.

131. As a result of Defendants' conduct, plaintiffs have suffered severe emotional distress as more fully alleged herein.

**COUNT IX**

Violation of Mass. Gen. L. c. 214 § 1C.
(Against city of New Bedford and the School Committee)

132. The plaintiffs reallege paragraphs 1 through 130 above and incorporate them herein by reference.

133. This Court has supplemental jurisdiction over claims brought under Chapter 214.

134. New Bedford Schools are an educational institution within the meaning of the statute.

135. Defendants are strictly and vicariously liable for actions committed by their employees that are within the scope of employment and furthered by their employment.

136. Defendants committed an unfair educational practice under Mass. Gen. L. c. 214 § 1C when Bill Doe was harassed, assaulted and abused and when they failed to address or adequately remedy the harassment and abuse by Students and staff.

137. Defendants' failure had the purpose or effect of interfering with Bill Doe's education by creating an intimidating, hostile, humiliating and offensive educational environment.

138. As a result of Defendant's unfair educational practices, in violation of Mass. Gen. L. c. 214, § 1C, Bill Doe has suffered severe emotional distress, humiliation and educational harm, as more fully set forth herein.

**RELIEF REQUESTED**

**WHEREFORE**, the plaintiffs claim judgment against Defendants and each of them, jointly and severally as follows:

A. Compensatory damages in an amount warranted by the evidence at trial;

B. Punitive damages in an amount warranted by the evidence at trial;

C. Reasonable attorney fees and costs incurred in this action;

D. Such other relief as permitted by statute and as this Court shall consider to be fair and equitable.

**JURY DEMAND**

The plaintiffs hereby demand a jury on all claims and issues so Triable

Respectfully submitted,

JANE DOE and JOHN DOE individually and on behalf of their minor child Bill DOE

By their attorney

/s/ Michael W. Turner
Michael W. Turner BBO 565820
PO Box 910
242 Wareham Rd
Marion Ma. 02738
Telephone: 508-748-2362
Facsimile: 508-748-6836
Email mturner@cape.com