UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE et al., | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *  Civil Action No. 14-cv-14388-IT |
| | * |
| CITY OF NEW BEDFORD et al, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

December 4, 2015

TALWANI, D.J.

I.     Introduction

Plaintiffs Jane Doe and John Doe, on behalf of their child Bill Doe, allege that Defendants failed to adequately respond to a pattern of bullying that Bill suffered at the hands of other students, failed to provide adequate accommodations for Bill's disability, and negligently maintained school facilities, which caused injury to Bill. Plaintiffs assert claims under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act, 29 USC § 794; and Massachusetts law against the City of New Bedford ("City"); the City of New Bedford School Committee ("Committee"), which operates and governs the public schools in the New Bedford School District ("District"); and various officials at the District and the Roosevelt Middle School in New Bedford, Massachusetts ("Individual Defendants").[1] Presently before the

---

[1] The Individual Defendants are Pia M. Durkin, Superintendent of Schools; D. Fernandes, Principal of the Roosevelt Middle School; James Brumbaugh, Assistant Principal of the Roosevelt Middle School; and Heather D. Larkin, Director of Student Services for the District.

court is Defendants' Motion to Dismiss [#11]. For the reasons set forth below, Defendants' motion to dismiss is ALLOWED IN PART and DENIED IN PART.

   II.   Factual Background as Alleged in the Amended Complaint

      a. *Bill Doe's Injury*

On December 14, 2011, Bill was playing indoor kickball at an afterschool program at the Carney Academy elementary school in a gym with "antiquated" and "out of date" hardwood flooring on top of concrete "with no foam padding." Am. Compl. ¶¶ 15-16, 19. Bill slipped and struck the back of his head during a kickball game, sustaining a concussion. Id. ¶ 15. As a result, Bill developed memory issues, light sensitivity, visual difficulties, and ongoing headaches. Id. ¶ 25. He was diagnosed as having a cognitive disorder. Id.

      b. *Accommodations for Bill's Disability*

On various occasions in early 2012, the District met with John and Jane Doe to present them with a plan to accommodate Bill's disability. Id. ¶¶ 28, 31. Plaintiffs allege various ways in which the plan was deficient. First, the District presented the plan as a "take it or leave it" offer. Id. ¶ 31. Second, the District provided no direct services or academic support for Bill for the 2011-2012 school year, with the exception of a few months of tutoring, which was eventually discontinued. Id. ¶¶ 31-32. Third, the District did not request or offer to perform its own evaluation of Bill's condition. Id. ¶ 31. Fourth, the District also refused to consider home services, even though Bill was not ready to return to school that year. Id. ¶ 27. Additionally, during the 2011-2012 school year, the school provided "manufactured grades which were not reflective of what Bill was actually learning." Id. ¶ 32. Bill transferred to the Roosevelt Middle School for the 2012-2013 school year, but because the District did not forward Bill's records to that school, the school did not provide any services until the end of December 2012, at which

time the school began to provide tutoring. Id. ¶¶ 33-34.

The school stopped paying for Bill's tutoring over the summer of 2013. Id. ¶ 45. At the start of the 2013-2014 school year, Defendant Larkin ordered that Bill's tutoring be stopped. Id. ¶ 46. John and Jane Doe requested another accommodation meeting in November 2013, but the meeting did not occur until February 2014. Id. ¶¶ 46-47. At the meeting, the school district agreed to provide Bill with various support services, but none of those services were placed in the accommodation plan, nor were the accommodations in the plan actually followed. Id. ¶¶ 47, 49. John and Jane Doe frequently expressed their concerns to Defendant Superintendent Durkin, but Durkin ignored those concerns. Id. ¶ 48.

     *c. Bullying by Other Students at the Roosevelt Middle School*

Other students began to bully and assault Bill on an ongoing basis starting in October 2012 and ending in May 2013. Id. ¶ 36. Id. In one incident in March, a student severely beat Bill and was subsequently charged with criminal conduct in juvenile court. Id. ¶ 38. Defendant Brumbaugh, who was responsible for making and keeping reports about the bullying, refused to give John and Jane Doe any copies of these reports and did not punish any offending students until the incident in March. Id. ¶ 36-38. As a result of the bullying, the school provided an aide to accompany Bill around the school. Id. ¶ 40. However, the provision of the aide made Bill a "bigger target for assaults by students." Id. During the last two-and-a-half months of the school year, a police escort accompanied Bill around school. Id. ¶ 41. The police escort "singled [Bill] out even more," and students continued to push and shove Bill even when the police escort was present. Id.

School officials met with John and Jane Doe in the spring of 2013. Id. ¶ 42. John and Jane Doe stated that Bill was "so depressed that he spoke of killing himself on a regular basis."

<u>Id.</u> Defendant Fernandes ignored the reports of depression and suicidal thoughts and instructed John and Jane Doe to find and pay for outside counseling for Bill. <u>Id.</u> Principal Fernandes refused to pay for that counseling, and threatened to "file a 51A complaint"[2] if John and Jane Doe did not comply. <u>Id.</u> ¶ 44.

### III. <u>Discussion</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In resolving such a motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009). The court, however, need not accept the plaintiff's legal conclusions as true. <u>Id.</u>

*A. Counts I and II: Substantive Due Process*

Plaintiffs assert a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. They bring this constitutional claim under 42 U.S.C. § 1983, alleging that Defendants violated Bill's substantive due process right to bodily integrity, privacy, and freedom from physical abuse by failing to protect him from bullying. <u>See</u> Am. Compl. ¶ 66. Plaintiffs do not allege that school officials directly violated those rights, but rather that school officials failed to protect him from harassment by student bullies. <u>Id.</u> ¶¶ 53-65, 74-75. Defendants move to dismiss Count I (against Individual Defendants in their personal capacities) and Count II (against the City and Committee) on the ground that school officials owed no constitutional duty to protect Plaintiff from harassment by private parties.

---

[2] Plaintiffs likely refer to Mass. Gen. Laws. ch. 119 § 51A, which requires certain "mandated reporter[s]" to notify the Department of Children & Families if they have reasonable cause to believe that a child is suffering injury resulting from abuse.

4

The Supreme Court has held that, as a general matter, "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). The "purpose of the Due Process Clause is to protect people from the state, not to ensure that the state protects them from each other." Rivera v. Rhode Island, 402 F.3d 27, 34 (1st. Cir. 2005).

In DeShaney, the Court acknowledged an exception to the general rule, that when a state creates a "special relationship" with an individual by taking the individual into custody against his or her will, the state assumes a constitutional duty of care. See 489 U.S. at 199-200.[3] The Court also reasoned that a state has no constitutional duty to protect against private violence when it "play[s] no part in" creating the danger and does nothing to render an individual "more vulnerable" to that danger. Id. at 201. From that language, some courts have considered a second exception to the general rule, the "state-created danger" theory. When the state creates or enhances the danger to an individual, "an affirmative duty to protect might arise." Rivera, 402 F.3d at 35 (citing DeShaney, 489 U.S. at 201). Courts that have recognized the "state-created danger" theory[4] have required that the state actor engage in an *affirmative act* that creates or enhances the danger to an individual. See Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by* Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) (state-created danger where police conspired to permit

---

[3] Plaintiffs do not rely on this exception. Courts considering the question have found that compulsory school attendance does not create a custodial relationship as envisioned by DeShaney. See, e.g., D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1371–72 (3d Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1079 (1993); Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc).

[4] The First Circuit has discussed the state-created danger exception but has "never found it actionable on the facts alleged." Rivera, 402 F.3d at 35; see id. at 36-38 (no state-created danger where state actors failed to protect teenage murder witness from private violence despite assurances of protection and awareness of threats).

5

skinheads to assault flag-burning demonstrators). The "absence of an affirmative act by the state in creating the danger is fatal" to a claim based on state-created danger. Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 55 n.9 (1st Cir. 2006). Additionally, the affirmative act cannot be "too attenuated from the danger at issue." Id.

Plaintiffs argue that "Defendants both played a role in creating the danger and increased the danger to Bill by essentially turning a blind eye to the bullying." Opp.'n Mot. Dismiss [#16] at 4. But, school officials turning a "deaf ear" to bullying does not implicate the state-created danger theory and give rise to a Due Process violation. Nabozny v. Podlesny, 92 F.3d 446, 449, 460 (7th Cir. 1996); see also Morrow v. Balaski, 719 F.3d 160, 177-79 (3d Cir. 2013) (no state-created danger where school failed to expel bullying student).

Even if "the state plays a role in the creation or enhancement of the danger, under a supposed state created danger theory, there is a further and onerous requirement that the plaintiff must meet in order to prove a constitutional violation: the state actions must shock the conscience of the court." Rivera, 402 F.3d at 35; Hasenfus v. LaJeuness, 175 F.3d 68, 72 (1st Cir. 1999) ("Outside of a few narrow categories . . . this means conduct that is truly outrageous, uncivilized, and intolerable."). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond [m]ere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." Melendez-Garcia v. Sanchez, 629 F.3d 25, 37 (1st Cir. 2010) (internal quotation marks omitted).

The only plausibly affirmative act that Plaintiffs plead is the provision of an aide to accompany Bill, which "made him an even bigger target for assaults by students." Am. Compl. ¶ 40. But even if the court were to accept that the provision of an aide escort constitutes an

6

affirmative act for the "state-created danger" theory, Plaintiffs cannot show that this action shocks the conscience of the court. School officials' actions that shock the conscience typically involve directly inflicting physical injury. See, e.g., Neal v. Fulton Cty. Bd. of Educ., 229 F.3d 1069, 1075-76 (11th Cir. 2000) (coach, as punishment, intentionally hitting football player in the head with a metal lock and knocking out his eye shocked the conscience); Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir. 1987) (principal forcing his way into room where student was hiding, grabbing her, throwing her against the wall, and slapping her was found to shock the conscience). Defendants' actions here were intended to provide protection to Bill and were the type of action sought by Plaintiffs. They did not approach the maliciousness of the type found to shock the conscience.

Even accepting all of well-pleaded facts in the Amended Complaint as true, Defendants' actions did not create or enhance the danger and their behavior did not shock the conscience. For those reasons, this court dismisses Counts I and II.

### B. Count III: Equal Protection

Plaintiffs assert in Count III that Individual Defendants violated Equal Protection by failing to protect Bill from bullying. The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105-06 (1st Cir. 2015). To survive a motion to dismiss, Plaintiffs "must allege facts plausibly demonstrating that compared with others similarly situated," Bill was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" Bill. Id. at 106 (internal quotation marks omitted). Individuals are similarly situated when "a prudent person, looking objectively at the incidents, would think them

7

roughly equivalent and the protagonists similarly situated." Id.

Plaintiffs allege no facts to establish that Bill and other students are similarly situated, nor did they establish that Defendants treated Bill differently from other students based on a constitutionally impermissible consideration or bad faith intent to injure him. See Pollard v. Georgetown Sch. Dist., No. 14-cv-14043-DJC, 2015 WL 5545061, at *5 (D. Mass. Sept. 17, 2015) (dismissing Equal Protection claims against school district and employees for failure to prevent bullying because the plaintiff did not show that she and other students were similarly situated or treated differently).  For these reasons, Count III is dismissed.

> C. *Counts IV and V: Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act*

Defendants move to dismiss Counts V and VI, where Plaintiffs allege that Defendants failed to accommodate Bill's disability, on the ground that Plaintiffs released their claims under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA").  Plaintiffs counter that the release does not cover Plaintiffs' claims.

In deciding a Rule 12(b)(6) motion to dismiss, a court is ordinarily limited to considering "only the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014).  When, however, "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

In moving for dismissal, Defendants rely on a Confidential Settlement Agreement and Release [#12-1] to show that Plaintiffs have released their Section 504 and Title II claims.  This document is not attached to or expressly incorporated into the Amended Complaint.  Instead, it is

8

attached to the Defendants' memorandum. Nor does this document fall within the exception applicable when the factual allegations in the complaint are "expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)." See Beddall, 137 F.3d at 17. Defendants cannot establish that Plaintiffs have released their claims without the Confidential Settlement Agreement and Release. Defendants' motion to dismiss Counts V and VI is denied.

### D. Count VI: Intentional Infliction of Emotional Distress

Plaintiffs assert claims for intentional infliction of emotional distress against the Individual Defendants for failure to protect Bill from bullying. As to the Individual Defendants in their official capacities, they are immune from liability for intentional torts. A suit against public officials in their official capacities is a suit against the government entity itself. Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). Under the Massachusetts Tort Claims Act ("MTCA"), public entities are immune from "any claim arising out of an intentional tort." Mass. Gen. Laws. ch. 258 § 10(c). See also Kelly v. LaForce, 288 F.3d 1, 12-13 (1st Cir. 2002); Spring v. Geriatric Auth. Of Holyoke, 475 N.E.2d 727, 734 (Mass. 1985).

As to the Individual Defendants in their personal capacities, Count VI fails because Plaintiff do not plead facts sufficient to show that the Individual Defendants' conduct was "extreme and outrageous." To state a claim for intentional infliction of emotional distress, Plaintiffs must allege "(1) that [the Individual Defendants] intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). To be "extreme and outrageous," the conduct must go "beyond all possible bounds of decency" and be "regarded as

atrocious, and utterly intolerable in a civilized community." Id. "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

Here, taking all facts from the Amended Complaint as true, Defendants' conduct did not rise to the level of "extreme and outrageous." Defendants could have done more to ensure that teachers were trained to address bullying, to punish students who bullied Bill, to offer Bill additional resources, and to provide more information to Bill's parents about bullying. But, Defendants made some efforts to respond to Bill's bullying. See Am. Compl. ¶¶ 40-41. Even if Defendants were indifferent and unreasonable in failing to act, their conduct did not go beyond all possible bounds of decency. For these reasons, Count VI is dismissed.

*E. Count VII: Gross Negligence Under Section 1983*

Defendants moved to dismiss Count VII, Plaintiffs' Section 1983 claim that the City and Committee were grossly negligence in maintaining the school gym floor, on the ground that gross negligence does not implicate a right actionable under Section 1983. Merely negligent actions or omissions by state officials do not "deprive" a person of life, liberty, or property within the Fourteenth Amendment, and are therefore not actionable under Section 1983. Germany v. Vance, 868 F.2d 9, 11 (1st Cir. 1989) (citing Daniels v. Williams, 474 U.S. 327 (1986)). Although the Supreme Court left open whether something less than intentional conduct, like recklessness or gross negligence, is actionable under Section 1983, see Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63 (1st Cir. 2002), courts in this district have acknowledged that Defendants' conduct must be, if not intentional, a "reckless[ly] or callous[ly] indifferen[t]" to Plaintiffs' rights. Gonzalez v. Dooling, No. 11-CV-30271-MAP, 2015 WL 1316107, at *8 (D. Mass. Mar. 23, 2015). See also DeToledo v. Cty. of Suffolk, 379 F. Supp. 2d 138, 144 (D. Mass.

2005) (noting that the "less than intentional" standard came to be defined as one of "deliberate indifference . . . sufficiently egregious to 'shock the conscience.'") (citing authority from the Massachusetts Supreme Judicial Court and the Seventh and Ninth Circuits).

Even taking all of the facts in the Amended Complaint as true, Defendants actions do not rise to the required level of reckless or callous indifference. Plaintiffs plead that Defendants failed to properly maintain a school gym floor. They did not plead that Defendants were callously indifferent to the risk of injury to students such as Bill. The allegations in the Amended Complaint sound in negligence, not a violation of Section 1983. Therefore, Count VII's Section 1983 claim is dismissed.

### F. Count VIII: Negligent Infliction of Emotional Distress[5]

Plaintiffs assert a claim of negligent infliction of emotional distress against Defendants for their failure to prevent other students from bulling Bill. Defendants move to dismiss Count VIII against the City, Committee, and the Individual Defendants in their official capacities on the ground that they are immune from liability for failure to prevent or diminish harm caused by third persons under Mass. Gen. Laws ch. 258, § 10(j). Section 10(j) prevents a public employer from being liable for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." Mass. Gen. Laws ch. 258, § 10(j). Consequently, a public employer "is immune from suit under G.L. c. 258, § 10(j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence." Kent

---

[5] This count is mis-numbered in the Amended Complaint.

11

v. Commonwealth, 771 N.E.2d 770, 775 (Mass. 2002).  For a public employer's conduct to be an "original cause," there must be "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that resulted in the harm inflicted by a third party."  Id. at 775-76.  The public employer's act "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm."  Id. at 775-76.

Plaintiffs argue that the City was the "original cause" of the "condition or situation" that "resulted in harmful consequences to Bill" because it "hired various school employees and did fail to properly supervise and assess their performance."  Opp'n Mot. Dismiss at 12.  But because Section 10(j) "was intended to provide some substantial measure of immunity from tort liability to government employers," this court must "not adopt an interpretation of the statute that construes the words 'originally caused' so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances."  Brum v. Dartmouth, 704 N.E.2d 1147, 1154 (Mass. 1999) (precluding liability for defendant school for stabbing of a student where school principal was aware of danger to the student).  The City's hiring of the school employees and the alleged lack of supervision cannot be construed to be the original cause of Bill's bullying perpetrated by other students.  Although the City hired the officials that are alleged to have failed to prevent the bullying, the original cause of the bullying was still the other students, not the officials.  Cf. Bonnie W. v. Commonwealth, 643 N.E.2d 424, 426-27 (Mass. 1994) (Commonwealth not immune because it negligently recommended for hiring a probationer who *himself* caused the harm).  Plaintiffs otherwise plead no affirmative act (as opposed to failure to act) by Defendants that originally caused students to bully Bill.

Individual Defendants in their personal capacities are immune from personal liability under the Massachusetts Tort Claims Act.  The MTCA prevents public employees from incurring

liability for negligent conduct occurring within the scope of their employment. See Mass. Gen. Laws ch. 258, § 2 ("[N]o such public employee . . . shall be liable for any injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."); Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003).  The scope of employment requirement is "not to be 'construed restrictively.'" Doe v. D'Agostino, 367 F. Supp. 2d 157, 174 (D. Mass. 2005).  The Individual Defendants' allegedly negligent failure to protect Bill occurred within the scope of their employment as school officials.  Therefore, Count VIII is dismissed.

    G. *Count IX: Violation of Mass. Gen. Laws. ch. 214 § 1C*

Plaintiffs stipulated to the dismissal of Count IX without prejudice, as they admit that they did not plead any facts that would give rise to a violation of the "Right to freedom from sexual harassment." Mass. Gen. L. ch. 214 § 1C.  Based on this stipulation, Count IX is denied as moot.

  IV.    Conclusion

For the foregoing reasons, the court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss.  Counts I, II, III, IX, VI, VII, and VIII are DISMISSED WITH PREJUDICE.  Defendants' motion to dismiss Counts IV and V is DENIED, and their motion to dismiss Count IX is DENIED AS MOOT.

    IT IS SO ORDERED.

December 4, 2015                                                                  /s/ Indira Talwani
                                                                                   United States District Judge